## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RUBEN[1] M. Jr.,[2]                    )
                                       )
            Plaintiff,                 )
                                       )          **CIVIL ACTION**
v.                                     )
                                       )          **No. 23-2349-JWL**
MARTIN O'MALLEY,[3]                    )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )
_____)


## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i)

and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).

Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS

---

[1] In the caption to Plaintiff's Brief (Doc. 7) and to the Commissioner's Brief (Doc. 11), the parties use "Rubin" as the spelling of Plaintiff's first name.  However, in the Complaint it is spelled Ruben.  (Doc. 1).  Whether that is the correct spelling or not, the court uses it here because it is the name in which this case was filed.

[2] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[3] On December 20, 2023, Mr. O'Malley was sworn in as Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. O'Malley is substituted for Acting Commissioner Kilolo Kijakazi as the defendant.  Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)

AFFIRMING the Commissioner's final decision.

## I.    Background

Plaintiff protectively filed an application for SSDI benefits on December 11, 2017.

(R. 232-34).  After receiving an unfavorable decision before the Social Security

Administration (SSA) dated June 17, 2020 (R. 10-27, 6798-6815), Plaintiff sought review

in the district court and this court found no conclusive evidence the ALJ "considered

Plaintiff's functional abilities in sitting, standing, and walking before he found the

exertional ability for light work.  [And], he did not specifically include those sitting or

standing and walking abilities in the RFC [(residual functional capacity)] he assessed."

(R. 6837); see also, (Ruben M., Jr. v. Kijakazi, Civ. A. No. 20-2530-JWL, Doc. 19, p.7,

(D. Kan. Feb. 15, 2022) (Ruben M., Jr., I) (Hereinafter, the court will, if necessary, cite

solely to the court's decision as presented in the record here).  This court remanded that

case for further proceedings consistent with that decision.  (R. 6839).

On remand, further proceedings ensued, a telephone hearing was had, and the ALJ

issued another unfavorable decision on June 7, 2023.  (R. 6733-46).  Plaintiff filed this

case on August 8, 2023, seeking judicial review of the Commissioner's decision after

remand pursuant to 42 U.S.C. § 405(g).  Here, Plaintiff claims the ALJ's RFC as it relates

to both physical and mental functional abilities is unsupported by substantial evidence.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the

4

burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court notes that both parties address the court's jurisdiction and the standard of review, but neither party addresses the issue of whether Plaintiff has exhausted administrative remedies before the SSA.  The regulations provide that if the claimant does not file exceptions to a decision after remand within thirty days, and if "the Appeals Council does not otherwise assume jurisdiction" of a decision after remand within sixty days, "the decision of the administrative law judge … becomes the final decision of the Commissioner after remand."  20 C.F.R. § 404.984.  The record contains no evidence of exceptions filed by Plaintiff or of the Appeals Council otherwise assuming jurisdiction of the decision after remand.  This case was filed 62 days after the ALJ issued his decision and the Commissioner does not allege the Appeals Council assumed jurisdiction in the interim.  Therefore, the court finds Plaintiff has exhausted administrative remedies and the ALJ's decision is the final decision of the Commissioner after remand.  The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.    Discussion

The court's review begins and ends with the final decision of the Commissioner and the administrative record upon which that decision is based.  If the decision reveals the ALJ applied the correct legal standard and if such relevant evidence in the record as a reasonable mind might accept as adequate to support a conclusion supports the ALJ's findings, the court must affirm the Commissioner's final decision.  This is so even if the

record evidence might also support a contrary conclusion or if the court would have

reached a contrary conclusion if its review were de novo.  "The possibility of drawing

two inconsistent conclusions from the evidence does not prevent an administrative

agency's findings from being supported by substantial evidence.  [The court] may not

displace the agency's choice between two fairly conflicting views, even though the court

would justifiably have made a different choice had the matter been before it de novo."

Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v.

Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

### A.    Obesity

Plaintiff points out the ALJ found Plaintiff's severe impairments included obesity.

(Pl. Br. 5).  She acknowledges the ALJ found at step three that Plaintiff's obesity does

not meet or equal the severity of a Listed impairment, but argues he "did not, however,

address Plaintiff's obesity in assessing the RFC [at] step four, other than to note Plaintiff

was diagnosed with obesity."  Id. (citing R. 6739-45).

As Plaintiff acknowledges, in his step three discussion the ALJ explained the

agency's procedure for evaluating obesity as presented in Social Security Ruling (SSR)

19-2p.  (R. 6737) (noting the ruling provides, "An individual may have limitations in any

of the exertional functions, postural functions, in their ability to manipulate objects, or to

tolerate extreme heat, humidity, or hazards because of obesity.").  He explained that

Plaintiff's "degenerative disc disease or obesity, considered singly or in combination,

does not result in the limitations described in listings 1.15 or 1.16."  Id.  He found, "In

this case, after evaluating any additional and cumulative effects of the claimant's obesity,

the evidence does not support finding the claimant's condition meets or equals the criteria of a listing." Id.

The RFC assessed for Plaintiff includes exertional, postural, manipulative, and hazard limitations which SSR 19-2p recognizes as at least potentially attributable to obesity. (R. 6738) ("lift and carry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. The claimant should never climb ladders, ropes, and scaffolds; and can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance as defined by the SCO [(Selected Characteristics of Occupations)]. The claimant should never work at unprotected heights or with moving mechanical parts; and can occasionally work in vibration.") (bold omitted). When discounting the prior administrative medical findings of the state agency medical consultants, Dr. Arnow and Dr. Ocrant, the ALJ found they are not persuasive because "the MRI findings and clinical abnormalities on exams, though infrequent, do support some limitations related to degenerative disc disease of the lumbar spine and obesity." Id. at 6742.

The ALJ concluded that Plaintiff's:

impairments require a reduction of the residual functional capacity. Based on the totality of evidence, I find the claimant is capable of performing less than the full range of light work, lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, standing and walking for six hours out of an eight-hour workday, and sitting for six hours out of an eight-hour workday. He should never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance, as defined in the Selected Characteristic of Occupations (SCO).

> He should never work at unprotected heights or with moving mechanical parts, and can occasionally work in vibration.

(R. 6744). He later summarized:

> In sum, the above residual functional capacity assessment is supported by the medical evidence record, statements of the claimant and the opinion evidence. Accordingly, based upon the objective evidence, the claimant's course of treatment, [his] level of daily activity and [his] work history, I have determined that the claimant retains the residual functional capacity for work at a range of the light exertional level, with the limitations noted above, due to [his] lumbar degenerative disc disease and obesity.

Id.

As the court's summary of the ALJ's decision makes abundantly clear, the ALJ extensively addressed Plaintiff's obesity and the limitations resulting therefrom throughout his decision, including in his RFC assessment after his step three discussion. Moreover, he related the evidence to his conclusion. What Plaintiff really argues is that the ALJ should have explained which limitations resulted from his obesity and why his obesity did not require greater limitations. Plaintiff ignores that he has the burden to prove his limitations, the Commissioner does not have the burden to prove Plaintiff does not have limitations or does not have greater limitations. To overcome the ALJ's findings, it is incumbent on Plaintiff to point to record evidence which compels finding greater limitations based upon his obesity. He has not done so.

### B. Duty to Rely on Medical Evidence and Medical Opinion

Plaintiff correctly argues the ALJ found unpersuasive the state agency medical consultants' conclusion that Plaintiff "did not provide sufficient evidence to establish severe physical impairments." (R. 6742). He argues there is, consequently, no other

evidence of Plaintiff's physical functional limitations except his own testimony, that "[t]he ALJ does not cite any medical evidence indicating Plaintiff can perform 'light' work," and that "the ALJ distinguished all of the medical opinions[4] in the record and then produced his own RFC assessment out of whole cloth."  (Pl. Br. 6-7) (quoting Kempel v. Astrue, No. 08-4130-JAR, 2010 WL 58910, at *8 (D. Kan. Jan. 4, 2010) (emphasis in Kempel).  He argues, "The ALJ should have fulfilled his duty to develop the record fully and fairly and obtained an opinion as to Plaintiff's physical functional limitations from an examining and/or treating physician."  Id. at 7 (citing Baker v. Barnhart, 84 F. App'x 10, 14 (10th Cir. 2003)).  Finally, he concludes the ALJ failed to "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC."  Id. 9 (quoting SSR 96-8p).

In response, the Commissioner argues the RFC limitations assessed need not be based upon a medical opinion to be supported by substantial evidence.  The Commissioner cites district court precedent within the Tenth Circuit and non-binding Tenth Circuit precedent for the proposition that neither medical opinion evidence nor specific medical evidence in the record is required to support the limitations found in the RFC assessment.  (Comm'r Br. 8-9).  One district court case relied upon particularly by

---

[4] The findings of state agency medical and psychological consultants are properly called "prior administrative medical findings," a term of art referring to the findings of state or federal agency physicians or psychologists about a medical issue at an earlier level of review.  20 C.F.R. § 404.1513(a)(5).  Although the term is broader in scope than a "medical opinion," id. at § 404.1513(a)(2), the terms are often used interchangeably and the court will follow that practice in this case except when necessary to draw a distinction.

the Commissioner quotes extensively from a published opinion of the Tenth Circuit.

Colby V. W. v. Kijakazi, 2022 WL 2953909 at *3-4 (D. Utah July 26, 2022) (quoting

Chapo v. Astrue, 682 F.3d 1285, 1288-89 (10th Cir. 2012)).

    RFC is an assessment of the most a claimant can do on a regular and continuing

basis despite his limitations.  20 C.F.R. § 404.1545(a); see also, White, 287 F.3d at 906

n.2.  It is an administrative assessment, based on all the evidence, of how a claimant's

impairments and related symptoms affect his ability to perform work related activities.

Id.; see also SSR 96-5p, 1996 WL 374183, *5 (SSA 1996) ("The term 'residual

functional capacity assessment' describes an adjudicator's findings about the ability of an

individual to perform work-related activities."); SSR 96-8p, 1996 WL 374184, *2 (SSA

1996) ("RFC is an administrative assessment of the extent to which an individual's

medically determinable impairment(s) ... may cause physical or mental limitations or

restrictions that may affect his or her capacity to do work-related physical and mental

activities.").  The Commissioner has provided eleven examples of the types of evidence

to be considered in making an RFC assessment, including:  medical history, medical

signs and laboratory findings, effects of treatment, reports of daily activities, lay

evidence, recorded observations, medical source statements, effects of symptoms,

attempts to work, need for a structured living environment, and work evaluations.  SSR

96-8p, id. at *5.

    Although an ALJ is not an acceptable medical source qualified to render a medical

opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from

the medical record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the

ALJ's RFC assessment is an administrative, rather than a medical determination."

McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security

Ruling (SSR) 96-05p, 1996 WL 374183, at *5).  Because RFC assessment is made based

on "all of the evidence in the record, not only the medical evidence, [it is] well within the

province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir.

Aug. 26, 1999); 20 C.F.R. § 404.1545(a).  Moreover, the final responsibility for

determining RFC rests with the Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546.

Contrary to Plaintiff's suggestion, the ALJ did not "distinguish[] all of the medical

opinions in the record and then produce[] his own RFC assessment out of whole cloth."

(Pl. Br. 7) (quoting Kempel, 2010 WL 58910, at *8 (emphasis in Kempel).  Rather, he

considered all the relevant evidence in the case record and assessed Plaintiff's RFC as

his duty under the regulations.

As the Commissioner argues, neither medical opinion evidence nor specific

medical evidence is required for each RFC limitation assessed.  Chapo is a Tenth Circuit

case which is precedent binding the court in this case.  There the court said:

> But, as the Commissioner notes, there is no requirement in the regulations
> for a direct correspondence between an RFC finding and a specific medical
> opinion on the functional capacity in question.  "[T]he ALJ, not a
> physician, is charged with determining a claimant's RFC from the medical
> record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir.2004) (following
> 20 C.F.R. § 416.927(e)(2) and SSR 96–59, 1996 WL 374183, at *5); see
> also 20 C.F.R. §§ 404.1546(c) and 416.946(c).  We have thus "rejected
> [the] argument that there must be specific, affirmative, medical evidence on
> the record as to each requirement of an exertional work level before an ALJ
> can determine RFC within that category."  Howard, 379 F.3d at 949; see,
> e.g., Wall, 561 F.3d at 1068–69 (upholding ALJ's findings on mental
> impairment where record did not contain any treating or examining medical
> opinions as to allegedly disabling pain disorder); Bernal v. Bowen, 851

F.2d 297, 302–03 (10th Cir.1988) (holding ALJ properly made mental RFC findings without expert medical assistance).

Chapo, 682 F.3d at 1288-89.  In Chapo, the court ultimately found error in the ALJ's determination to accord little weight to Dr. Vega's opinion because the opinion was unopposed and because it was an examining source opinion.  Id. at 1291.

Here, there are two reasons not to follow the ultimate holding of Chapo.  This court does not find the opinions unopposed in this record and, most importantly, the Commissioner has done away with the treating physician rule and any relative weighing of treating, examining, or non-examining source opinions one against another for cases filed on or after March 27, 2017.  20 C.F.R. §404.1520c (2017); see also, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,858, 2017 WL 168819 (SSA Jan. 18, 2017) ("By moving away from assigning a specific weight to medical opinions, we are clarifying both how we use the terms 'weigh' and 'weight' in final 404.1520c(a), 404.1527, 416.920c(a), and 416.927 and also clarifying that adjudicators should focus on how persuasive they find medical opinions and prior administrative medical findings in final 404.1520c and 416.920c. Our intent in these rules is to make it clear that it is never appropriate under our rules to 'credit-as-true' any medical opinion.").  The court also explained when introducing the new rules:

> Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision.  As the Administrative Conference of the United States' (ACUS) Final Report explains, these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be [a] highly deferential standard to us.

Id. 82 FR 5,844-01, 5,853.

Because there is no requirement for medical opinion evidence to correspond to RFC limitations, Plaintiff's argument the ALJ must seek physical functional limitations in a consultative exam must also fail. Moreover, the court finds it ironic that counsel would provide over 6,500 pages of medical records, producing a record 7,384 pages in length (by far the longest record ever reviewed in this court's recollection) and argue the record contains insufficient evidence to assess RFC.

Plaintiff has the burden to prove he cannot perform any substantial gainful activity—in this case a range of light work. It is not the Commissioner's burden to prove Plaintiff can perform work. Rather, given the limitations proven by Plaintiff, it is the Commissioner burden to demonstrate that there is work available to an individual with such limitations in the national economy. Thus, since the ALJ assessed limitations which would allow a range of light work in this case, it is Plaintiff's burden to cite record evidence which compels greater limitations.

### C.    Physical RFC Assessment

Plaintiff attempts to show error by citing his own testimony of limitations to demonstrate he cannot perform a range of light work. (Pl. Br. 6-7). However, the ALJ found numerous inconsistencies between Plaintiff's allegations of disabling symptoms and the record evidence. The ALJ found: The medical evidence was inconsistent with Plaintiff's allegations of physical limitations in that the modest MRI and EMG findings were out of proportion to the severity and degree of limitations Plaintiff alleged. (R. 6740). Plaintiff's "medical sources typically described the claimant as objectively

normal, or they made no mention of noteworthy abnormalities in objective signs like sitting, standing, transitioning, independently ambulating, gait, strength, dexterity, range of motion, muscle tone, reflexes, straight leg raise, and sensation loss." (R. 6740). Some of the abnormalities suggested in clinical findings "correspond with unrepresentative variables like overexertion." Id. [E]xaminations during the relevant period did not consistently reveal a significant degree of muscle atrophy, significant sensory or motor loss, significant reflex abnormality, serious gait disturbance, or significantly reduced range of motion of the spine or joints" which is inconsistent with the alleged severity of his lower back pain with radiculopathy. Id. He found: The frequency and extent of treatment sought by Plaintiff was "inconsistent with his allegations of debilitating pain and physical limitations" in that "there is no record of the claimant being referred for surgery, or having long-term hospitalizations, inpatient rehabilitation placements, and home health-aide assignments," and that "during the period at issue, the claimant's long-term treatment modalities generally involved brief periods of specialized care and routine, infrequent, and little-changed outpatient medication-management and monitoring services." Id. The ALJ found Plaintiff was performing activities during the period at issue between April 18, 2016, Plaintiff's alleged onset date (AOD), and September 30, 2018, his date last insured (DLI), including driving, doing household chores, shopping, and performing childcare related tasks. "He took college classes, walked, ran, and went to the gym." The ALJ acknowledged the cited activities do not establish the ability to perform full-time work, but that his "ability to engage in these activities is another factor

to be considered" when assessing Plaintiff's allegations of disabling symptoms.  (R. 6741).

The ALJ also found several inconsistencies between Plaintiff's allegations of mental functional limitations and the record evidence.  Regarding mental health treatment records, the ALJ found "despite the voluminous medical record in this case, the overwhelming majority of these documents are duplicative, pre-AOD, post-DLI, non-medical, and/or not about the claimant's mental health."  Id.  The ALJ acknowledged some examinations noted mental abnormalities but found that Plaintiff's "clinical records typically reflect silent or benign examination signs in terms of his appearances/hygiene, reality orientation, alertness, behavior, cooperation, speech, eye contact, mood, affect, thoughts, memory, fund of knowledge, insight, and judgement."  Id.  He found, "There is also evidence of 'over-endorsement['] of symptoms, and some of the claimant's mental clinical abnormalities correspond with gaps in treatment or with only-recently-resumed treatment."  Id. (citation omitted).  Regarding mental health treatment, the ALJ found "the record does not reflect any regular or long-term psychiatric hospitalizations or consistently frequent visits with mental emergency rooms, psychiatrists, and psychotherapists during the relevant period.  Instead, his treatment has consisted primarily of routine, infrequent, and little-changed outpatient services" with significant gaps in treatment during the relevant period.  Id. 6741-42.  Finally, the ALJ found Plaintiff engaged in activities requiring mental abilities during the relevant period—"he was married, lived with his spouse and children, swept/vacuumed, washed dishes, prepared meals, drove for up to 30 minutes, went to stores, read news, and used the

internet for research therapies [sic]"—activities which do not prove ability for full-time work but which are another factor to be considered in evaluating Plaintiff's allegations of disabling mental limitations.  (R. 6742).

The ALJ's finding of inconsistencies cites to record evidence and is supported by the evidence cited.  Moreover, the reasons given to discount Plaintiff's allegations are valid reasons.  Thus, Plaintiff's citation to other evidence and argument the ALJ should have found differently is in essence a request that the court weigh the evidence differently and substitute its judgment for that of the Commissioner, a task it is forbidden.  Lax, 489 F.3d at 1084.  Plaintiff does not point to record evidence compelling a different finding.

### D.   Mental RFC Assessment

As Plaintiff suggests, the individual who applied the Commissioner's Psychiatric Review Technique and assessed the Mental RFC in the initial agency determination signed his name "Alfredo Amezaga" and did not affix a medical title which would usually signify that reviewer is a single decisionmaker (SDM) whose work product is not opinion evidence.  Jones v. Berryhill, 720 F. App'x 457, 460 (10th Cir. 2017) (citing Program Operations Manual System, (POMS) Completion of the Physical RFC Assessment Form DI 24510.050 C(V)(a)(note). ("SDM-completed forms are not opinion evidence at the appeal levels.")).  However, as the Commissioner points out, on the reconsideration review, "Dr. Amezaga is plainly identified as a Ph.D." psychologist. (Comm'r Br. 18) (citing R. 81).  Moreover, POMS DI 24510.060A(2)(a), titled "Mental Residual Functional Capacity Assessment" instructs, "In decisions that are not fully favorable, only a psychiatrist or psychologist is to perform the analysis and decide the

mental functional capacity."  The decision at issue is not fully favorable, Dr. Amezaga performed the mental abilities analysis, and the court must assume, absent proof otherwise, that the agency followed its established procedures.  The court finds that Dr. Amezaga is a psychologist, and his findings must be accepted and evaluated as "prior administrative medical findings."

In the initial determination, the disability examiner (DE) provided an ADJ [(adjudication)] SUMMARY, and based on those findings suggested a PRT[(Psychiatric Review Technique)]/MRFC with moderate social limits and occasional interaction with others.  (R. 68).  In his explanation of the PRT, Dr. Amezaga stated on March 1, 2018 that he had reviewed the medical evidence of record (MER) and the "Findings of Facts and Analysis of Evidence" (FOFAE) and found Plaintiff's "Primary limitations are in his interaction with others." And he is "[a]ble to engage & interact for brief, short-term periods.  Sufficient for SRT w/ LPC.  PC [(psychological consultant)] accepts ADJ rationale."  (R. 69) (underline added).  In the MRFC, Dr. Amezaga found Plaintiff "Moderately limited" in several areas of social interaction.  (R. 70-71).  His narrative explanation found Plaintiff "Capable of brief, short-term encounters with peers, supervisors & others." Id. 71.  In his additional explanation, he noted, "See PRT."  Id.  In his reconsideration, Dr. Collado signed the PRT evaluation and the MRFC assessment from the initial determination without change.  Id. 84. 86-87.  At both the initial and reconsideration level, the agency determined Plaintiff is not disabled.  Id. 73, 88.

Plaintiff claims the ALJ's RFC assessment conflicts with Dr. Amezaga's and Dr. Collado's opinion but failed to explain why he did not accept the opinion—in violation of

17

SSR 96-8p.  Plaintiff's claim ignores the ALJ's evaluation of Dr. Amezaga's and Dr.

Collado's opinions.  The ALJ recognized the doctors' opinion Plaintiff "has moderate

limitation in his ability to interact with others, and as a result, is limited to brief, short-

term encounters with peers, supervisors, and others."  (R. 6742).  He accepted these

findings and noted they "are also supported by a review and summary of the available

evidence."  Id.  He discounted the doctors' opinions that Plaintiff "is limited to simple,

routine tasks …, despite [their] finding only mild limitation in understanding,

remembering, or applying information and maintaining concentration, persistence, or

pace."  Id.  He found the doctors'

> opinions are only partially consistent with the other substantial evidence of
> record that indicates moderate limitations in understanding, concentration
> and adaptation.  For instance, although the medical evidence of record is
> once again not entirely consistent with the claimant's allegations of
> disability, his ongoing symptoms and mental health treatment, though
> somewhat sporadic during the relevant period, and the clinical
> abnormalities noted on some exams also support moderate limitations in
> understanding, remembering, or applying information, maintaining
> concentration, persistence, or pace, and adapting and managing oneself.
> Therefore, their prior administrative medical findings are only partially
> persuasive.

Id.  Thus, as explained above, the ALJ discounted the psychological consultants'

opinions and found Plaintiff was not limited to simple repetitive tasks (SRT) or to little

public contact (LPC)[5] as argued by Plaintiff, but assessed Plaintiff with the abilities to

"understand, remember and carry out simple, detailed but not complex instructions" and

to "occasionally respond to and have interaction with supervisors, coworkers and the

---

[5] Because the ALJ discounted the consultants' opinions in this regard, the court need not
decide whether LPC stands for little public contact or limited personal contact.

general public." Id. 6738 (finding no. 5, bold omitted). The ALJ explained his reasons for finding the psychological consultants' opinions only partially persuasive, which portions he rejected, and why he did not adopt the whole opinions. More is not required. Plaintiff does not point to record evidence which compels a different finding.

To the extent Plaintiff argues the ALJ's assessment of the ability to "occasionally respond to and have interaction with supervisors, coworkers and the general public" conflicts with the consultants' opinion Plaintiff is "[a]ble to engage & interact for brief, short-term periods," (R. 69. 84), and "[c]apable of brief, short-term encounters with peers, supervisors & others;" id. at 71, 86; the court sees no conflict. As noted above, the ALJ recognized that in applying the PRT, the psychological consultants found Plaintiff has moderate limitations in the area of interacting with others; id. 67, 84; and in their MRFC found Plaintiff "[c]apable of brief, short-term encounters with peers, supervisors, & others." Id. 71, 86. He also found these opinions "supported by a review and summary of the available evidence." Id. 6742. Plaintiff does not point to record evidence, vocational authority, or legal authority demonstrating that occasional interaction (interaction totaling up to one third of a workday) is in material conflict with a moderate limitation or with brief, short-term encounters. Nor does he point to evidence that any of the jobs relied upon by the ALJ—routing clerk, folder, or marker—require more than brief, short-term encounters with peers, supervisors, or the public.

Plaintiff's argument regarding the ALJ's finding moderate limitations in understanding, remembering, or applying information rather than mild as did the psychological consultants is to a similar effect. The ALJ discounted the consultants'

opinion regarding simple, repetitive tasks because it was inconsistent with the consultants' opinion of only mild limitations in understanding, remembering, and applying information.  In other words, he found the consultants' opinion in that regard internally inconsistent and not well reasoned.  Thus, he properly explained why he rejected that opinion.  Having done so, he is not required to further consider that opinion when considering the limitations to be assessed after finding moderate limitations in understanding, remembering, and applying information.  He did not necessarily find Plaintiff had greater limitations when evaluating the consultants' opinions, he merely found the consultants' limitations were inconsistent with their earlier findings. Moreover, Plaintiff has not shown that finding moderate limitations in the ability to understand, remember, and carry out instructions does not encompass, prohibits finding, or requires finding greater limitations than the ability to "understand, remember and carry out simple, detailed but not complex instructions" as the ALJ found when assessing Plaintiff's RFC.  (R. 6738).

Plaintiff next argues the ALJ erred in failing to evaluate the persuasiveness of Dr. Timmons's opinion prepared on January 10, 2017.  (Pl. Br. 15-17) (citing R. 911-920 (Ex. 6F/227-36).[6]  He argues the ALJ ignored Dr. Timmons's opinion, thereby committing clear error.  Id. at 17.  In making his argument, Plaintiff ignores both the ALJ's decision and what Dr. Timmons's alleged "opinion" actually is.  After explaining his evaluation of the medical opinions in the record, the ALJ explained:

_____

[6] Dr. Timmons's entire report is in the administrative record at Ex. 6F/226-37, R. 910-21.

> I have taken note that the record includes decisions by other government
> and nongovernmental entities, as well as statements on issues reserved to
> the Commissioner of Social Security.  However, such decisions and
> statements are not binding on the Social Security Administration, and they
> are not the Commissioner's decision as to whether the claimant is disabled
> under the Social Security Act.  Such evidence is neither inherently valuable
> nor persuasive.  Therefore, they are not persuasive.  Nevertheless, I have
> fully considered the supporting evidence underlying these decisions and
> statements when reaching the findings herein.

(R. 6743) (citations omitted, including 6 D file exhibits and nine F file exhibits, including

Ex. 6F).  Thus, it is clear the ALJ rejected as inherently unpersuasive as a decision by

another government or nongovernmental entity some portion of exhibit 6F.

In exhibit 6F, medical records from the VA, Dr. Timmons's report is given the

"LOCAL TITLE:  C&P PTSD, REVIEW," and the STANDARD TITLE:  C & P

EXAMINATION NOTE."  (R. 910).  At the VA, "C & P Exam," or compensation and

pension exam is the term used to describe a VA claim exam.  VA Claim Exam, available

online at, https://www.va.gov/disability/va-claim-exam/ (last visited, June 21, 2024).

The regulations define a medical opinion:

> (2)  Medical opinion. A medical opinion is a statement from a medical
> source about what you can still do despite your impairment(s) and
> whether you have one or more impairment-related limitations or
> restrictions in the following abilities: (For claims filed (see § 404.614)
> before March 27, 2017, see § 404.1527(a) for the definition of medical
> opinion.)
>
> (i)   Your ability to perform physical demands of work activities, such
> as sitting, standing, walking, lifting, carrying, pushing, pulling, or
> other physical functions (including manipulative or postural
> functions, such as reaching, handling, stooping, or crouching);
>
> (ii)  Your ability to perform mental demands of work activities, such as
> understanding; remembering; maintaining concentration,
> persistence, or pace; carrying out instructions; or responding

21

> appropriately to supervision, co-workers, or work pressures in a
> work setting;
>
> (iii)   Your ability to perform other demands of work, such as seeing,
>         hearing, or using other senses; and
>
> (iv)    Your ability to adapt to environmental conditions, such as
>         temperature extremes or fumes.

20 C.F.R. § 1513(a)(2).

The Commissioner argues Dr. Timmons's report is a VA decision and not required to be discussed by the ALJ, leaving open the possibility it may be a medical opinion, but is not required to be discussed in the ALJ's decision.  (Comm'r Br. 19) (citing 20 C.F.R. § 404.1520b(c)).  In his Reply Brief, Plaintiff argues Dr. Timmons's opinion is not a VA decision but is a "medical opinion as to Plaintiff's functional limitations per 20 C.F.R. 404.1513(a)(2)."  (Reply 16).  The court disagrees with the Commissioner to the extent that the regulations are clear—the decision must include an evaluation of every medical opinion.  Thus, if Dr. Timmons's opinion is a medical opinion, failure to evaluate it is reversible error.

Plaintiff acknowledges the key requirement for a "medical opinion" in the regulations is assessing <u>functional limitations</u> in accordance with 20 C.F.R. § 404.1513(a)(2) ("<u>what you can still do</u> … and whether you have one or more impairment-related <u>limitations</u>").  Dr. Timmons's C & P Examination note is not a medical opinion within the meaning of the regulation because it simply does not contain any <u>functional limitations</u> in any of the abilities in 20 C.F.R. § 404.1513(a)(2)(i – iv).  The closest it comes, is in stating Plaintiff "endorsed the following behaviors as

22

SEVERELY impaired … Standing for long periods such as 30 minutes.  Walking a long distance such as a kilometer."  (R. 919-20).  However, these are merely Plaintiff's statements as to his functional limitations which are not even repeated or otherwise adopted by Dr. Timmons as being her opinion.

The C & P Examination Note completed by Dr. Timmons appears to be a checklist completed by the psychologist to determine if Plaintiff meets all the criteria, or how many of the criteria he meets, to satisfy a finding of PostTraumatic Stress Disorder as a service-connected disability under the requirements of the VA.  The note contains two sections.  Section I contains background information regarding Plaintiff's mental diagnoses and medical diagnoses related to his PTSD.  (R. 910-12).  It provides a broad summary checked by Dr. Timmons asserting that Plaintiff has "Occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood," and explains that Plaintiff's major depression is secondary to and results from "the same etiology" as his PTSD.  Id. 911.

Section II is entitled "Clinical Findings."  Id. 912.  It contains Plaintiff's "Social/Marital/Family history," "Occupational and Educational history," "Mental Health history," "Legal and Behavioral history," and "Substance abuse history," apparently all gleaned, without citation, from his earlier medical records.  Id. 912-15.  Then it provides a checklist of specific criteria that are met within eight categories of criteria entitled "PTSD Diagnostic Criteria."  Id. 915-17.  The criteria are listed as present without citation to or explanation of a basis.  Next the note has a portion entitled "Symptoms" instructing the provider to "check all symptoms that actively apply to the Veteran's

diagnoses," and in which 14 symptoms are checked including "Inability to establish and maintain effective relationships," "Impaired impulse control, such as unprovoked irritability with periods of violence," and "Persistent danger of hurting self or others." (R. 917).  None of the symptoms checked contain a citation or explanation of the basis. The note contains the narrative report of a mental status examination with no functional limitations specified.  Id. 918.  The note states Plaintiff is competent to manage his own financial affairs.  Id. 919.  Dr. Timmons remarked Plaintiff was administered four "self-report instruments" and noted Plaintiff had endorsed certain symptoms as "EXTREMELY impaired or CANNOT DO," certain "behaviors as SEVERELY impaired," certain "behaviors as MODERATELY impaired," and certain "behaviors as MILDLY impaired."  Id. 919-20.

Dr. Timmons concluded her C & P Examination Note:

The veteran appears to have psychiatric problems of a chronic and severe nature that significantly and negatively impact his interpersonal, social, academic, and occupational functioning:

1.)   An inability to tolerate frustration without becoming emotionally intense, angry, and argumentative with the general public, co-workers, or supervisors.

2.)   An inability to tolerate normal interpersonal relationships and/or interactions without feeling threatened (such as when a car is parked outside the building} or angry (as when he perceives others as being lazy or doing things wrong and feeling that he needs to tell them what to do or how to behave).

3.)   An inability to tolerate a normal a work load [sic], a normal work schedule, or minimal levels of work stress without significant disruption from psychiatric symptoms to include anxiety, panic attacks, paranoia, irritability, and anger.

> 4.) Attention and concentration problems due to interference from
> intense emotional experiences and reactivity.

(R. 920).

Although Dr. Timmons's note contains numerous conclusory statements regarding Plaintiff's impairments, it does not contain any functional limitations or explanation of any limitations in Plaintiff's abilities. Moreover, the note appears to be merely a conclusory decision regarding Plaintiff's VA disability. Even if it is not, it is not a medical opinion within the meaning of the regulation and the lack of specific discussion of the note is not error.

Finally, Plaintiff claims the ALJ erred in evaluating Dr. Burkett's medical opinion. Plaintiff first claims it was error to discount Dr. Burkett's opinion based on its being "issued 8 months after Plaintiff's date last insured" because the ALJ found the psychological consultant's opinions partially persuasive, Dr. Collado's opinion was issued after Plaintiff's date last insured, and a retrospective opinion is permitted. Id. 18. Plaintiff is correct that a retrospective opinion is permitted in Social Security disability cases. However, the ALJ noted that Dr. Burkett's examination was performed nearly eight months after the DLI and was therefore "not necessarily an accurate representation of his functioning during the relevant period." (R. 6743) (emphasis added). The ALJ was not concerned with the retrospective opinion but with the fact that opinion was based on physical and mental functioning after the relevant period which may not be representative of Plaintiff's functioning during that period. Dr. Amezaga and Dr. Collado, on the other hand, had before them Plaintiff's mental health treatment records

and did not perform an examination after the relevant period which might affect the retrospective aspect of their opinion.  Moreover, although Dr. Collado reviewed the medical record about three months after the DLI, Dr. Amezaga reviewed the record about a month before the DLI, and as Plaintiff has strenuously argued, Dr. Collado adopted Dr. Amezaga's opinion without change.  This is a valid reason, among others, to discount the persuasiveness of Dr. Burkett's opinion.

Plaintiff objects to the ALJ's discounting Dr. Burkett's opinion because she[7] is not a vocational expert.  (Pl. Br. 19).  Plaintiff supports his argument by noting that Dr. Burkett worked as a medical consultant familiar with SSA regulations, rulings, and procedures and is familiar with VA statutes, regulations, and rules and the question whether Plaintiff's condition meets or equals a Listed Impairment is not a vocational question.  Id.  However, the ALJ discounted Dr. Burkett's opinion because she is not a vocational expert and her assertion that Plaintiff "is 'unquestionably unable to work' is beyond the scope of her expertise."  (R. 6743) (quoting without citation R. 134).  As the ALJ noted, the question whether, given an individual's limitations, that individual is able to work is clearly a vocational question outside the expertise of a medical doctor such as Dr. Burkett.  That is a proper rationale to find the physician's opinion less persuasive.

In similar fashion, Plaintiff objects that the ALJ discounted Dr. Burkett's opinion because she is not a mental health specialist.  He argues that, although she is not a mental

---

[7] Plaintiff refers to Dr. Burkett as a male, the ALJ refers to Dr. Burkett as a female, Dr. Burkett's first name, Rox, is not definitive, and the report Dr. Burkett provided does not resolve the matter.  Therefore, the court refers to Dr. Burkett as a female because it assumes the decision below is correct unless shown otherwise.

health specialist, she worked for years as a medical consultant for the SSA and because of that was considered highly qualified and expert in SSSA disability evaluation.  (Pl. Br. 19-20) (citing SSR 17-2p).  He argues that, as such, she "need only be a licensed physician (medical or osteopathic doctor) to be qualified as a medical consultant."  Id. 20 (citing POMS DI 24501.001(C)).

Plaintiff is correct that Dr. Burkett previously worked as a medical consultant with the SSA.  However, he sidesteps the fact that Dr. Burkett is not a mental health specialist, and that is one factor, among others, justifying discounting the persuasiveness of her opinion in this case.  Moreover, as noted previously in this decision, POMS DI 24510.060A(2)(a), instructs, that only a psychiatrist or psychologist is to decide mental functional capacity in an unfavorable decision.  Further, the POMS cautions that even "In fully favorable determinations, the medical or psychological consultant (MC/PC) who completes the mental RFC assessment, to the extent possible, should be a psychiatrist or psychologist."  POMS DI 24510.060A(2)(b).  Plaintiff's assertion that Dr. Burkett worked as an MC with the SSA is not supportive of his argument in this regard.

Plaintiff also claims error in discounting Dr. Burkett's opinion as "inconsistent with Plaintiff's purportedly routine and conservative treatment, silent/benign findings as to gait, ambulation, strength, reflexes, tone, alertness, attention, judgement, and behavior."  (Pl. Br. 20).  He argues, "Gait, ambulation, strength, reflexes, and tone do not speak to Plaintiff's mental functioning.  As to 'silent' findings as to 'alertness, attention, judgment, and behavior,' the absence of evidence is not evidence."  Id. (citing Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir.1993" (absence of evidence is not evidence)).

Once again, Plaintiff ignores the content of Dr. Burkett's opinion and the rationale of the ALJ.  Dr. Burkett, who is a medical doctor but not a psychiatrist, opined that Plaintiff's condition meets or equals the severity of Listing 1.04A.  (R. 134).  Listing 1.04A is a disorder of the spine with evidence of nerve root compression characterized by specific signs and symptoms.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A (2018).  A finding that Plaintiff's condition meets or equals the severity of this Listing requires identification of the required signs and symptoms.  Thus, a lack of discussion of signs such as gait, ambulation, strength, reflexes, and tone during the relevant period is a reason to find Dr. Burkett's opinion less persuasive.  The same result obtains where the physician failed to discuss alertness, attention, judgement, and behavior throughout the relevant period although she found the severity of Plaintiff's condition meets or equals the severity of the mental Listings 12.04, 12.06, 12.15A.  While the lack of evidence is not evidence, the failure to discuss required criteria is a proper basis to find a physician's opinion regarding meeting or equaling a Listing is less persuasive.

Plaintiff simply has not shown error in any of the ALJ's evaluation or rationale.  His appeal to other findings of the physicians or psychologists, or other evidence which might support a contrary finding, without demonstrating that the evidence compels a different conclusion is merely an improper request that the court substitute its judgment for that of the Commissioner rather than a request to review the decision below to determine whether the proper legal standards were applied and whether substantial evidence supports the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated June 24, 2024, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**